## TERRITORY v. CHRISTENSEN.

1. AMENDMENT OF RECORD IN CRIMINAL CASE—MAY BE MADE AFTER TERM.

Where it is not sought to amend, modify or in any manner change the judgment rendered, and where the corrections sought are merely clerical, the acts themselves having been all properly done, and the steps affecting defendant's rights all properly taken, but the clerical record of such proceedings defectively made, the court has power after the term, to amend the record so as to set forth the proceedings as they were actually had, even where the defects in the original record were such as would be fatal to the judgment.

2. RECORD—SILENCE OF AS TO CHARGE.

A judgmet in a criminal case will not be reversed because the charge of the court to the jury is not made a part of the judgment roll, where the record fails to show affirmatively that defendant requested the judge to charge the jury in writing; the presumption, in the absence of any request found in the record, being that the judge charged orally.

3. CHARGING JURY—CRIMINAL PROCEDURE—NOT MODIFIED BY CIVIL PROCEDURE AS TO.

Sec. 343 of the Code of Criminal Procedure, relating to charging juries in criminal actions, in so far as it contravenes Sec. 248 of the Code of Civil Procedure, must prevail in criminal causes.

Filed February 16, 1887.

Writ of error to the district court of Moody county.

*Winsor & Swezey*, for plaintiff in error.

In criminal actions the purpose of the record is to preserve the memory of those proceedings, which are deemed in law essential to justify the punishment. Hence it must affirmatively show the offense, the sentence and all the steps, without which the sentence would be unlawful. 1 Bishop Crim. Pro. Sec. 1347 and cases cited—Note 1; *Ex parte* Gidson, 31 Cal. 620;

People v. Gaines, 52 Cal. 479; Douglas v. State, 3 Wis. 820; Davis v. State, 38 Wis. 487; Hoskins v. People, 84 Ill. 87, 25 Am. Rep. 483; Grigg v. People, 31 Mich. 471; State v. Saunders, 53 Mo. 321; Com. v. Tobin, 125 Mass. 203; Smith v. State, 51 Wis. 615; Temple v. Com. 14 Bush. 769, 29 Am. Rep. 442; State v. Muir, 4 Pac. Rep. 812, (Kan.); Stewart v. People, 23 Mich. 63; Messner v. People, 45 N. Y. 1; Mullen v. State, 45 Ala. 43, (6 Am. Rep. 691;) People v. Trim, 37 Cal. 274.

That the omission of charge of the judge from the record, as required by Section 446 Code Crim. Prac. we cite the above authorities, and especially:   People v. Corbell, 28 Cal.; People v. Gaines, 52 Cal.; Grigg v. People, 31 Mich.; Com. v. Tobin, 125 Mass.; Davis v. State, 38 Wis.; Smith v. State, 51 Wis.; Messner v. People, 45 N. Y. 1; Matter of Ring, 28 Cal. 247; Hopt. v. Utah, 114 U. S. 488.

*Geo. Rice, Attorney General* for defendant in error.

It is conceded that if the district court has no power to amend a record to conform to and show truthfully the proceedings actually had on a trial of a cause, then the first five errors assigned by plaintiff in error are fatal, and this case must go back.   If the district court has this power, then those first five errors assigned by plaintiff in error, have been cured by the amendments, and need no further consideration.

In the case of Anna Belaska v. State of Minnesota, the court, in giving the opinion, say:   "It not being disputed that the proceedings set forth in amendment to the record were actually had on the trial of the cause in the court below, there can be no question as to the right of the lower court to order the amendment."   3 Minn. 427, Gil. 313; Code Crim. Proc. 142; Anderson v. Parker, 6 Cal. 490; 13 Cal. 490; 15 Cal. 9; 11 Iowa 66; Pride v. Wormwood, 21 Id. 227; Hawkes v. Davenport, 38 355; O'Connell v. Coher, 44 Id. 48; Wyman, Ex. v. Buckstaff *et al.* 24 Wis. 477; 22 Wis. 95; 5 Wis. 386; 21 Wis. 340; 15 Wis. 206; 31 Cal. 340; 12 Ark. 63; 9 Ala. 547; 1 Fla. 437; 2 Ala. 161; 35 Me. 138.

The record, as amended, shows that the charge of the court below was given orally, and was taken down by the court

stenographer, as provided by Sub-div. 6 of Sec. 343, C. Crim. Proc., to which no exception was taken by the defendant. Section 446, C. C. Proced. must be construed with Sub-div. 6 of Sec. 343 of C. C. Proced., and only applies when the court is required to reduce its charge to writing.

TRIPP, C. J. The defendant was tried at the October term, 1884, of the district court in and for Moody county, upon an indictment for murder, was convicted of the crime of manslaughter in the first decree, and was sentenced to imprisonment in the penitentiary at Sioux Falls for the term of 24 years and 4 months. No motion was made for a new trial, or for arrest of judgment, nor was any bill of exceptions tendered or settled in the case; but some time after judgment was pronounced, and the defendant had been conveyed to the penitentiary, defendant sued out a writ of error, and assigned as errors of record as follows: "(1) Error in that the plea of defendant does not substantially conform to the statutory form required by Section 276, Code Crim. Proc. (2) Error in that it does not appear by the record that the clerk or district attorney on the trial read the indictment, or stated the plea of the defendant, to the jury. (3) Error in that it does not appear by the record that when the verdict was given and recorded, or at any time, the clerk or any officer of the court read it to the jury, or inquired of them whether it was their verdict, or that the jury declared the same. (4) Error in that it does not appear that a time was appointed by the court, after the return of the verdict, for pronouncing judgment, or any time allowed after verdict before judgment. (5) Error in that the record does not show that before judgment the defendant was informed of the nature of indictment, or of his plea, or of the verdict, or was asked whether he had any legal cause to show why judgment should not be pronounced against him. (6) Error in that no charge of the court is contained or appears in the record of the action, as provided by Section 446 of said Code. (7) Error in rendering said judgment without stating offense. (8) Other errors and omissions in said record, wherein it is insufficient to sustain said judgment.

This writ of error came on for argument at the October term of this court, 1885, at which time the attorney for the territory made an application to the court for a writ of *certiorari* to the district court of Moody county, requiring it to further. certify the record of the proceedings had at this trial, alleging that the record sent up was not a full and complete transcript of the record and proceedings had in the lower court; and such writ having issued, returnable at the February term of this court, 1886, and, at said February term, such return not having been made and filed, the order was extended, and made returnable at the May term of this court, 1886. At the May term, 1886, the clerk having made return to said writ of *certiorari*, it appears from inspection thereof, and of the record returned, that on the twenty-seventh day of March, 1886, after allowance of the writ of error, and issuance of the writ of *certiorari*, and after expiration of the term at which judgment was rendered, the district court to which such writ of *certiorari* was directed made an order correcting and supplying the omissions, irregularities, and errors complained of in the first five assignments of error, as well as that complained of in the seventh assignment. This amendment of the record was made by the lower court upon written notice, supported by affidavits of the clerk and of the district attorney, served upon the attorneys of record of the defendant, and by personal service upon the defendant himself 12 days before the hearing, stating the grounds of the motion, and the substance of the proposed amendment, and the time and place of hearing. The amendments were made from the recollections of the clerk of the district attorney, and of the judge presiding at the trial, who was still the presiding judge of that court, and from the inspection of the records and papers filed in the action. No objection was made to this amendment by the defendant in the court below, and no exception was taken to such action of the court in the lower or appellate court. And no question is raised in any manner in this court but that the record, as now presented, is a true and correct transcript of the proceedings as they occurred in the court below.

The record, as returned by the writ of *certiorari*, shows the entire proceedings had:     (1) The original record in the court below; (2) the proceedings taken to procure the amendment of the record; and (3) the record as amended.

And the defendant now alleges that there exists in the present record two errors:     (1) That the action of the court below, in amending the record, is without authority and void; (2) that the sixth original assignment of error has not been cured, and is fatal.

The attorney general admits that the errors contained in the original first five assignments of error are fatal, if they have not been cured by the amendment of the record, so that the discussion of this case is limited to the two propositions: (1) Did the court err in amending the record? (2) Is the failure to incorporate the charge of the court in the judgment roll a fatal omission?

If the court had no power to amend its record after the term at which judgment was rendered, that would end this case, and it will be unnecessary to consider the second proposition. The question of amending the record is not a new one.  Courts have been in the habit of amending their records ever since the courts of record have had an existence.  No two of the cases cited are exactly alike in the facts presented, and very few of them are parallel with the one at bar.  All the cases agree that the courts have absolute control over their records during the entire term at which the judgment was rendered, and in which action or proceeding the amendment is sought to be made.  We have examined, with some care, the cases cited and relied upon by the defendant, denying the right of amendment after the term at which the action or proceeding is determined, and it may be said of them, in general, that they are not in point, upon the facts of this case.  All, or nearly all, of them are cases in which, after expiration of the term, some amendment or modification of the judgment itself is sought to be made, affecting the substantial rights of the parties, upon disputed parol testimony, and the recollections os persons and parties.  Many of them seek, by engrafting something upon or in taking some-

thing from the record of the judgment itself, to reverse, in effect, the whole determination of the action; others seek, by similar methods, to merely enlarge or diminish the effect of the decision at first rendered.

There must always be a time when litigation is at an end, and when the successful litigant can pause and feel that his judgment is final; and no better time, it is believed could have been named by the able jurists of the past, than the term at which such final judgment is rendered. By a strict adherence to such a rule, courts and suitors are not affected by changing circumstances and shifting events, which otherwise might often bring about the reconsideration of final jndgments in actions honestly and correctly determined. Our own supreme court has laid down the correct rule in Roberts v. Haggert, 29 N. W. Rep. 656, (determined at the February term, 1886) in which case the supreme court denied a reargument upon motion made after lapse of a term at which the action was finally determined. But that class of cases is to be distinguished from the one at bar. Here no attempt is made to amend, modify, or in any manner change, the judgment rendered. It is only sought to build up and strengthen the foundation upon which the determination of the court rests, and not in any manner to weaken or strengthen the determination itself.

The corrections made are purely clerical; the acts themselves were all done; the proceedings were all had; the steps affecting the defendant's rights were all taken; but the record thereof—the purely clerical part—was not done. The judge himself could not do this. It was no part of his business to reduce to writing the various acts done by himself, and those by him directed to be done. The rights of the prisoner were all saved and protected when the court had done all those things which the statute required to be done in the trial and determination of his case. The record of the proceedings is not necessary to the trial of an action. It is only necessary to a review of the case, and as an evidence in the future of what did in fact occur. There is no statute which requires that this record shall

be made up at any particular time.   In practice, such record is not usually made at the time of the occurrence of each transaction, and it is no unusual thing that such final records are actually made up after the adjournment of the term, by careful clerks, from papers and *memoranda* kept of each proceeding as it occurred; and, whether such practice is one to be commended or condemned, this court is not now prepared to say that records so made and entered are not the "minutes of the court" because they were not entered upon the journal itself contemporonous with the occurrence of each act.   The court itself is the sole judge of the correctness of its own records, and during the continuance of the term, which in law is but one continuous day, may make, alter, modify, and change its records to conform to the facts, at its own will; and, if the clerk has failed to record any act of the court during the term, no good reason can be seen why the clerk should not, by order of the court, supply any omission which sustains the orders and decisions made or rendered by the court after the term at which such order or decision was made or rendered.

The early history of English jurisprudence informs us that the action of the court; its pleadings, and its decisions, were at first all *ore tenus*, and that great liberality was necessarily allowed, in the matter of amendments, both before and after determination of the action; and that, subsequently, when judgments came to be entered up by the clerks, misentries and mistakes were subsequently corrected by the recollection of the judges and officers of the court.   The abuses that grew up under such a loose system of judicial action were sought to be corrected by 13 Edw. I., which provided "that although we have granted to our justices to make record of pleas pleaded before them, yet we will not that their own record shall be a warranty for their own wrong, nor that they may erase their rolls, nor amend them, nor record them contrary to their original enrollment."   Under this statute grew up much of the strictness which is found in the earlier decisions of the common law as to amendments of the records of courts; and so much of timidity or sensitiveness on

the part of the courts, to interfere with its past records, succeeded to their former system of liberal amendments, that it resulted injuriously to clients and suitors, and judgments rendered upon cases carefully tried and considered were reversed for mere misspellings and clerical irregularities. Parliament again was appealed to, and a number of statutes were enacted to remedy what Blackstone terms the "opprobrious niceties of the judges." Among these acts was that of 8 Hen. VI., Chap. 12, which provided in effect, that the judges of the courts, in which any record for the time shall be, shall have power to examine such record, by them and their clerks, and to reform and amend, in affirmance of the judgments of such records, "all that which to them in their discretion, seemeth to be misprison of the clerks therein." These statutes became a part of our common law, and the basis of the decisions of the courts which permit amendments of the record after the term, in affirmance of the judgment.

Bilanski v. State, 3 Minn. 427, (Gil. 313,) is a case much in point. Defendant was convicted of murder, and moved for a new trial, which was denied. She appealed to the supreme court, and the judgment was affirmed. Upon *remittitur* filed in the lower court, she moved, in arrest of judgment, that by the record, among other things, it appeared (1) that no officer was sworn to take charge of the jury; (2) that all the jurors were not sworn; (3) that, after verdict, it was not read to the jury, and they asked if it was their verdict, etc.,—all of which was required to be done by the statute, and to appear of record. The prosecuting attorney then moved the court to correct the record, and to make it show, in accordance with the fact, that each of such acts complained of was in fact done. The amendment was resisted on the ground, not that the facts sought to be recorded were not true, but that the court, after the term, had no power to make such amendments. The court granted the amendment, and, on appeal, the supreme court, in a carefully considered opinion, sustained the action of the lower court;

citing a large array of authorities, both English and American, in support of the amendment.

In Walker v. State, reported in 1 N. E. Rep. 857, the transcript, when first filed in the supreme court, showed that only 11 jurors were present when the verdict was rendered. Proceedings were taken to have an amended record supplied, as in the case at bar, and, up n amendment made in the court below and a certified.copy thereof returned to the supreme court, the same objection was taken to the jurisdiction of the court as in this case, and, in addition thereto, it was objected that service of the proposed amendment upon the defendant in prison was invalid; that the service upon attorneys was invalid, as they were not attorneys of record after judgment; and that the amendment was made upon insufficient evidence; but the court overruled all the objections, and sustained the power of the court below to make the amendments; citing Smith v. State, 71 Ind. 250, and other authorities.

In Kelley v. U. S., reported in 8 Crim. Law Mag. 171, and 27 Fed. Rep. 616, the defendant was indicted for manslaughter and put upon trial in the circuit court, district of Maine. The jury disagreed, and were discharged, but the clerk failed to enter the order discharging the jury upon the record. Subsequently the grand jury, in the district court, found an indictment against defendant, and the United States attorney entered a *nolle prosequi* of the indictment in tne circuit court. Upon trial in the district court, defendant pleaded "former jeopardy" and offered the record of the circuit court, showing his arraignment, plea, the impaneling of the jury, and no discharge. Upon presentment of this record, the district judge, who had sat with the circuit judge at the trial in the circuit court, suspended proceedings in the district court, went immediately into the circuit court, (that court then standing open,) and directed the clerk to enter the order discharging the jury, and certify the record of such fact to the district court, which was accordingly done. Proceedings were then resumed in the district court, the plea of "former jeopardy" was overruled, and, after conviction, on appeal to the circuit court, the power of the

court to amend its record was sustained. Says the court, (COLT, J.:) "The plaintiff in error contends that his plea of former jeopardy should have been sustained on the ground that the court had no right to correct the record in the manner stated; and that, without such correction, the plea of former jeopardy would be good, because, as the record then stood, it did not appear that the jury had been discharged. The district judge sat at the trial of the case in the circuit court. The fact was one within his knowledge, and the knowledge of all present. The omission was a mere clerical one. Under the circumstances we can discover no error in the order to correct the record in accordance with the fact. The power of the court to amend its own record, *nunc pro tunc,* has long been recognized, and is well established. Gilmer v. Grand Rapids, 16 Fed. Rep. 708; Jones v. Lewis, 8 Ired. 70."

Upon this subject Bishop says: "On other principles, to correct a clerical error, to supply an omission of fact, or prevent an injury accruing through a delay of the court, and perhaps in some other circumstances, there is an undefined, yet limited, power of making amendments and *nunc pro tunc* entries at a subsequent term. There ought, in general, or always, to be something to amend by; yet, by some opinions, the court is not thus absolutely restricted as to the evidence." Bish. Crim. Proc. 1343, citing a great number of authorities.

Wharton also lays down a similar doctrine. Whart. Crim. Pl. & Pr. § 913.

We have no doubt that the power of amendment was correctly exercised upon the facts of this case.

The second error complained of relates to the charge of the court. Defendant contends that the charge is a necessary part of the judgment roll, and that in case of a failure to make it a part of the record, he is entitled to a reversal of the judgment on writ of error.

Section 446 of our Code of Criminal Procedure provides: "When judgment upon a conviction is rendered, the clerk must enter the same upon the minutes, stating briefly the offense for which the conviction has been had, and must immediately annex

together and file the following papers, which constitute a record of the action: (1) The indictment and copy of the minutes of the plea or demurrer; (2) a copy of the minutes of the trial; (3) the charges given or refused, and the endorsements, if any, thereon; and (4) a copy of the judgment."

Section 343 of the same code, among other things, provides: "The judge must then charge the jury  He may state the testimony, and must declare the law, but must not charge the jury in respect to matters of fact. Such charge must, if so requested be reduced to writing before it is given, unless by tacit or mutual consent, it is given orally, or unless it was fully taken down at the time it was given by a stenographic reporter appointed by the court."

From this section it appears that the judge is not required to charge the jury in writing unless he be requested to do so by the defendant, and that in any criminal case he may charge the jury orally, if it be fully taken down by the court stenographer.

It is contended, however, that this section is modified by Section 248 of the Code of Civil Procedure, which reads as follows: "The court, in charging the jury, shall only instruct as to the law of the case; and no judge shall instruct the petit jury in any case, civil or criminal, unless such instructions are reduced to writing; and, when instructions are asked which the judge cannot give, he shall write on the margin thereof the word 'refused,' and such as he approves he shall write on the margin thereof the word 'given;' and he shall, in no case, after instructions are given, qualify, modify, or in any manner explain the same to the jury otherwise than in writing; and all instructions asked for by counsel shall be given or refused by the judge without modification or change, unless such modification or change be consented to by the counsel asking the same."

It is true that Section 248 of the Code of Civil Procedure does provide that "no judge shall instruct the petit jury in any case, civil or criminal, unless such instructions are reduced to writing," and, if such section is to be construed to mean that such instructions are to be reduced to writing before the jury

are instructed, the section is certainly in conflict with Section 343 of the Code of Criminal Procedure above quoted; and in such case we are to be governed by the canon of construction found in Sections 16 and 17 of the "General Repealing Act" of 1877, in which it is to be provided that all the codes are to be deemed to have been passed on the same day, and as parts of the same statute;" and that "if the provisions of any code, title, chapter or article, conflict with, or contravene the provisions of any other code, title, chapter or article, the provisions of each code, title. chapter or article must prevail as to all matters and questions arising thereunder, out of the same subject matter." Under this rule the section of the Criminal Code as to charging the jury, so far as it "is in conflict with and contravenes" Section 248 of the Code of Civil Procedure, must prevail, and govern the courts in the matter of instructions to juries in criminal cases.

Hopt v. Utah, 114 U. S. 488, 5 Sup. Ct. Rep. 972, is cited and relied upon by defendant in support of his position that the charge of the court is a necessary part of the judgment roll, and that a failure to insert it will reverse the case on error. An examination of that case, which has been four times to the supreme court of the United States, and there three times reversed, will show that the statute of Utah, on which the case in 104 and 114 U. S. was determined, is essentially different from ours. Under the Utah statute, as the court says, "the statute expressly and peremptorily requires that the charge of the court to the jury shall be reduced to writing before it is given, unless by mutual consent of the parties, it is given orally." 114 U. S. 490, 5 Sup. Ct. Rep. 973. In that case the record showed that the judge charged the jury, but the record presented no charge of the court. The inference was irresistible that he charged orally; or, in the language of the court, "the record merely states that the court charged the jury, and does not state whether the charge was written or oral. If the charge was written it should have been made part of the record, which has not been done. If it was oral the consent of the defendant was

necessary, and the consent does not appear of record, and cannot be presumed." 114 U. S. 491, 5 Sup. Ct. Rep. 973.

The case is clearly distinguishable from the one at bar. If inference arises, from the neglect of the clerk to insert the court in the judgment roll, that the judge charged orally, such inference would not affect the rights of the defendant under our statute, unless it affirmatively appear that he requested the judge to charge in writing, Our statute is the counterpart of the Utah statute. It requires all charges to be in writing, unless by mutual consent it be oral; ours permit all charges to be oral, unless, by request, it be reduced to writing, or be taken down by the court stenographer. All reasonable presumptions are in favor of the judgment. The presumption is that the statute was complied with; and if the presumption be that, in absence of any charge found in the judgment roll, the judge charged orally, the presumption would also be that in absense of any request found in the record, that no request was made by the defendant to the judge to reduce his charge to writing. Our statute is a peculiar one. It is founded upon the California statute, which was adopted in Utah without change in the section we are now considering. The original language was that "such charge must be reduced to writing before it is given, unless by mutual consent of the parties it is given orally." Our codifers changed this part of the section so as to read: "Such charge must, if so requested, be reduced to writing before it is given, unless by tacit or mutual consent, it is given orally, or unless it is fully taken down at the time it is given by a stenographic reporter appointed by the court."

It will be observed that three important changes have been made in the original statute: (1) By inserting the words "if so requested;" (2) by inserting the word "tacit;" and (3) by inserting the clause as to taking down the charge by a stenographer. These changes were intentional. The codifiers must have had the Utah or California section before them, and when they used these significant words, in the peculiar order in which they are found, they must have intended them to qualify the particular clauses with which they were used in connection;

and, giving to such words their usual and ordinary meaning, we must come to the conclusion, as already announced in reference to the words "if so requested," that they were intended to limit and control the sentence or clause between the words of which they are inserted, to make the sentence read and mean that, if the defendant so request, the charge must be reduced to writing before it is given, and that, if he do not so request, it need not be reduced to writing before it is given.

We have no difficulty with the construction of the section so far, and, but for the insertion of the word "tacit" in the next qualifying clause, there would seem to be no ambiguity in the amendments made. The words "unless by tacit and mutual consent it is given orally," may qualify the preceding clause very properly with the words, "if so requested," left out, but the effect of their qualification with those words in is not so apparent. But effect must be given to both amendments, if possible, and we must construe the latter amendment as made subsequent to the first, or as qualifiying the preceding clause as it now exists; and we must then conclude that, by the "tacit and mutual consent," (that is, consent expressed by silence, or actual consent, expressed by both parties,) the charge need not be reduced to writing in the case provided for in the preceding clause as it reads, after the amendment is made by inserting the words, "if so requested." That is to say, it need not be reduced to writing "if so requested," if subsequent "tacit or mutual consent" be given to an oral charge. In other words, the first clause must have the full modifying force of the words "if so requested," which would require the defendant in every case to make the request. Otherwise the court would be authorized to charge orally; and this clause, modified by "tacit and mutual consent," would make the effect to be that, if there be a "tacit" or "mutual consent" to the oral charge, the court would not be required to reduce his charge to writing, even though the defendant had previously requested him to do so. This is the logical and only deduction that can fairly be drawn from the order and character of these amendments, and this construction is sustained by the succeeding and qualifying

clause, as to taking the charge by the court stenographer. This clause is introduced by the same words, "or unless," etc.; clearly indicating that it is intended to qualify the first clause, and to make the section to mean that, in case the defendant requested the charge to be reduced to writing, it would be sufficient reason for not doing so if either there was a subsequent tacit or mutual consent to an oral charge, or the charge was taken down by a court stenographer.

It follows from this construction that it is the duty of the defendant, if he desired the charge to be first reduced to writing, to make the request; and that, after he has made such request, the court can only be excused from reducing his charge to writing by the tacit or mutual consent of the defendant, or by having the charge taken down by a court stenographer. This affirmative action is cast upon the defendant, to make the request, and the record must show such request before the record would be required to show a consent or a taking by the stenographer; and, in absence of both charge and request in the rocord, following the doctrine of Hopt v. U. S. *supra*, the inference would seem to be that such charge was oral, and that no such request was made; and it would seem that, if the record contained such a request, it should further contain the written charge or a statement of the fact that it was given orally by consent, or was taken down by the court stenographer. Section 446 of the Code of Criminal Procedure, which requires that the charge of the court shall be made a part of the judgment roll, must be construed, in connection with Section 343 of the same code, to mean that the charge when reduced to writing as provided for in that section, shall be attached to and made a part of the judgment roll. But if the view contended for by defendant's counsel, to-wit, that if the charge is taken by the stenographer, and cannot be appended immediately, it should be done without delay, be the correct one, it is difficult to see how such an omission by the clerk or stenographer could affect a judgment otherwise correct, and already rendered, perhaps, and entered. It would be, at most, a mere ministerial act, which he could compel the performance of, but which could

not certainly so far affect his rights as to make prior acts void.

It will be observed that no question has been raised as to the manner in which these alleged errors have been presented to this court. It will also be observed that the attention of the lower court was never called to the errors here complained of by motion in arrest of judgment or otherwise, and it has never directly passed upon them. But, as it was desired by both sides to reach the main points involved, the court has not seen fit, of its own motion, to raise the question, and we only now refer to it that we may not hereafter be bound by the precedent should the question come before us for determination.

The judgment of the court below must be affirmed. All the justices concurring.