No. 80-313

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

KATHERN W. HUNSAKER RAGEN,

                    Plaintiff, Cross-Defendant
                    and Respondent,

    -vs-

ARLO B. WESTON AND VERNETTA
C. WESTON, Husband and wife,

                    Defendant and Appellant.

---

Appeal from:  District Court of the First Judicial District,
              In and for the County of Broadwater,
              The Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

    For Appellant:

        Small, Hatch and Doubek, Helena, Montana

    For Respondent:

        Hooks & Budewitz, Townsend, Montana

---

                  Submitted on Briefs:  January 22, 1981
                        Decided:  MAR 2 5 1981

Filed:  MAR 2 5 1981

_____
                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal arises from a partial summary judgment entered against the defendants and in favor of the plaintiff by the District Court of the First Judicial District, in and for the County of Broadwater.

Plaintiff, formerly Kathern Hunsaker, now Kathern Ragen, was the equitable owner of certain real property in Townsend, Montana, where she conducted a dry goods business. On July 20, 1978, Ragen entered into an agreement to sell the inventory of her business and to lease for $500 a month the real property to defendants, Arlo and Vernetta Weston. In the lease agreement, which expired on February 15, 1979, defendants were also granted an irrevocable option to purchase the building and fixtures for a sum of $75,000, less all rentals previously paid. The agreement further provided that, if the option was exercised, the Westons would pay to Ragen 29 percent of the total purchase price in the year of the sale and the balance would be paid over a period of ten years.

The Westons, in an apparent effort to exercise the option, advised Ragen that they had forwarded a $17,000 check to the State Bank of Townsend to be used as a portion of the downpayment. The parties then executed a contract for the sale of the real property, dated February 22, 1979, in accordance with the terms provided in the lease and option to purchase. The Westons paid their first installment of $500 under the contract on or about March 1, 1979. However, when Ragen went to the State Bank of Townsend to pick up the $17,000 downpayment on March 9, 1979, she was informed that the check would not be honored

because there were insufficient funds in the account on which it was written.

Failing to receive the agreed upon downpayment, Ragen notified defendants in writing on March 13, 1979, that the contract was deemed rescinded and that she was treating the $500 already paid as rent for the month of March. Plaintiff further demanded that defendants vacate the premises on or before March 31, 1979.

On November 7, 1979, Ragen filed a complaint against the Westons seeking payment for real property taxes levied and assessed against the property for and during the term of the lease as provided in the lease agreement; payment for the reasonable value of certain fixtures sold by defendants during their occupancy of the premises; and payment for the reasonable value of a typewriter defendants refused to return upon vacating the property. The Westons denied any indebtedness to plaintiff and filed a counterclaim alleging that Ragen had wrongfully rescinded the agreement to purchase the property which resulted in damages in the amount of $25,000. In addition, the Westons alleged that during the term of the lease they placed approximately $6,000 worth of fixtures in the building and that by reason of the wrongful rescission and plaintiff's retention of these fixtures, they had been further damaged in that amount.

Following discovery, plaintiff filed a motion for summary judgment on all liability issues. Defendants responded with their motion for summary judgment with respect to Ragen's claim for the real property taxes. The District Court, on May 22, 1980, granted Ragen's motion for

summary judgment as to her claim for the real property taxes, with the exact amount of the taxes to be determined at trial or at an evidentiary hearing. The court further ordered that the motion for summary judgment on the issue of defendants' liability for the value of the typewriter and the fixtures be denied in that material issues of fact still remain. The court then granted summary judgment for plaintiff on both of defendants' claims for damages and ordered that the counterclaims be dismissed. Judgment was so entered on May 28, 1980, and defendants now appeal.

The following issues are presented for our review:

1. Did the District Court err in granting plaintiff summary judgment on the issue of defendants' liability for the payment of the real property taxes?

2. Did the District Court err in rejecting defendants' counterclaims for damages resulting from a wrongful rescission of the purchase agreement and for damages resulting from a wrongful retention of certain fixtures?

This Court has consistently held that the party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Reaves v. Reinbold (1980), ____ Mont. ____, 615 P.2d 896, 37 St.Rep. 1500; Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613; Kober v. Stewart (1966), 148 Mont. 117, 417 P.2d 476.

Here, the District Court could properly grant the summary judgment on the issue of defendants' liability for the property taxes only by finding that the lease and option

to purchase agreement entered into by the parties required defendants to make the payments. The agreement is clear and specifically provides as follows:

> "By reason of concessions made by Hunsaker with respect to the option to purchase below set forth, Westons agree to pay the real property taxes levied and assessed against the premises during the term of their lease, and also agree to pay Hunsaker's fire insurance for the period of said lease. Hunsaker shall be entitled upon receipt of tax notice or insurance premiums or both, to make demand of Westons for payment of these items, and Westons agree to pay the same."

Defendants maintain that the agreement to pay the real property taxes was conditioned upon their exercising the option to purchase and that, as a result of this assertion, a material issue of fact remains to be resolved. We must disagree.

It is fundamental that the language of a contract will govern its interpretation if that language is clear and explicit and does not result in an absurdity. See section 28-3-401, MCA; Danielson v. Danielson (1977), 172 Mont. 55, 58, 560 P.2d 893, 894; Nelson v. Combined Insurance Company of America (1970), 155 Mont. 105, 113, 467 P.2d 707, 712. The pertinent language in this instance is unequivocal, unambiguous, and requires no interpretation. It specifically states that "Westons agree to pay the real property taxes levied and assessed against the premises during the term of their lease." Nowhere in the contract is there additional language indicating that this provision is qualified by a condition that the option to purchase first be exercised.

The applicable provision must be given effect as written by the parties; thus, the District Court properly

granted plaintiff summary judgment on the issue of liability.

The second issue concerns defendants' claim of wrongful termination. Section 28-2-1711, MCA, provides that a party may rescind a contract in the following cases:

"(1) if the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party;

"(2) if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

"(3) if such consideration becomes entirely void from any cause;"

In this instance, plaintiff, after being informed by defendants that the agreed downpayment on the option to purchase had been deposited at the State Bank of Townsend, executed the contract at issue. This contract provided that the $75,000 purchase price was to be paid as follows:

"A. The sum of Three Thousand two hundred fifty Dollars ($3,250.00), the receipt of which is hereby acknowledged by seller, said sum representing the credit given to buyers for rentals heretofore paid under the lease and option of July 20, 1978.

"B. The sum of Seventeen thousand Dollars ($17,000) upon execution of this agreement, the receipt thereof being hereby acknowledged by seller.

"C. The balance of Fifty-four thousand seven hundred fifty Dollars ($54,750.00), together with interest . . . to be paid in regular monthly installments, each in the amount of Five hundred Dollars ($500.00), the first monthly installment being due and payable on the 1st day of March, 1979."

Upon reading the contract, it is obvious that the $17,000 check deposited in the State Bank of Townsend was an

essential part of the consideration to be received by plaintiff and an inducement for executing the agreement. It is uncontroverted, however, that plaintiff never obtained this money because the check was dishonored due to the lack of sufficient funds. Since the consideration failed, the remedy of rescission was properly available.

Section 28-2-1713, MCA, specifies how rescission is accomplished:

> "Rescission, when not affected by consent, can be accomplished only by the use on the part of the party rescinding of reasonable diligence to comply with the following rules:
>
> "(1) He must rescind promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind.
>
> "(2) He must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

Here, rescission was prompt. Within three days of having the downpayment check dishonored, plaintiff delivered a written notice of rescission to defendants and their attorney setting forth the grounds for the action. Furthermore, the status quo existing prior to the contract to purchase was preserved in that the $500 installment paid by defendants was credited as rent for March 1979, allowing them to remain on the premises until the end of the month. Section 28-2-1713, MCA, must be deemed satisfied.

Defendants argue that we should look solely to the default clause contained in the agreement to purchase in determining Ragen's proper remedy. In rejecting this argument, we note that this case does not involve a mere

default in the payment of an installment but concerns the total failure of consideration essential for the validity of the contract. The consideration having failed, the remedy of rescission was available and, when exercised, the contract, including the default clause, was extinguished. See section 28-2-1701(2), MCA.

Defendants further argue that the State Bank of Townsend erroneously refused to honor the $17,000 check; thus, it was the Bank's fault, not theirs, that this consideration failed. We acknowledge this contention but must conclude that any claim for damages based on this assertion lies against the Bank for wrongful dishonorment, not against plaintiff for wrongful termination of the contract at issue.

We find no error in the District Court's dismissal of defendants' claims for damages based upon a wrongful rescission and termination of the contract.

The Westons' final claim for damages arises from plaintiff's alleged wrongful retention of fixtures placed on the premises by defendants during their occupancy. The District Court dismissed this claim, finding it without basis. We agree with the court's conclusion.

Defendants contend that plaintiff will be unjustly enriched if she is allowed to retain the fixtures. What defendants fail to realize, however, is that a fixture, by definition, is part of the real property to be retained by the owner of the premises at the expiration of the lease. See sections 70-15-101, 70-15-103, and 70-18-101, MCA.

Defendants argue that even though the fixture is considered part of the realty, a tenant under certain

circumstances is still entitled to its removal, citing section 70-18-102, MCA:

> "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for the purposes of trade, manufacture, ornament, or domestic use if the removal can be effected without injury to the premises unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

We agree that a tenant is generally accorded the right to remove certain trade fixtures; however, this right is not without limitation. As the above-cited statute indicates, the removal is to be accomplished during "the continuance of his term."

Defendants have alleged no effort being made to remove the fixtures prior to vacating the premises; nor have they alleged that plaintiff interfered with such an effort. In fact, defendants waited until January 2, 1980 (some nine months after leaving the premises), to assert any claim. Furthermore, the claim finally asserted was for the reasonable value of the fixtures based upon an allegation of wrongful rescission and not for removal of the improvements as trade fixtures. On the submitted record, section 70-18-102, MCA, has no application to this proceeding, and defendants' claim was properly rejected.

The judgment of the District Court is affirmed.

_____
Justice

-9-

We concur:

_____
Chief Justice

_____

_____

_____
Justices